JOSEPH E. SEAGRAM & SONS, Inc., v. MARZALL, Commissioner of Patents.

No. 10067.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 13, 1949.

Decided Jan. 23, 1950.

Mr. Arthur F. Robert, Louisville, Ky., with whom Mr. J. Harold Kilcoyne, Washington, D. C., was on the brief, for appellant.

Mr. Joseph Schimmel, Washington, D. C., with whom Mr. W. W. Cochran, as Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This case involves a claim for a patent which would cover a method of testing beverages and like products, in order to make advance determination of consumer reactions and preferences.

Joseph E. Seagram & Sons, Inc., the plaintiff below and the appellant here, filed this action in the District Court under section 4915 of the Revised Statutes,[1] alleging that it was entitled to receive a patent which the Commissioner of Patents had refused to grant. The District Court dismissed the complaint, holding the claims of invention unpatentable on the grounds that they constituted nonstatutory subject matter; that they were indefinite; and that the claims lacked the invention necessary to patentability, as the prior art disclosed methods substantially similar to those proposed by the claimant. Seagram brings this appeal under section 17—101 of the District of Columbia Code.[2]

Several claims of invention were filed. Claim 10 is representative, and is as follows:

"In the art of testing samples of beverages and the like, having chemically-indefinable sense-perceptible qualitative properties, such as bite, body, odor and taste, a method of obtaining, through human sensory reactions, substantially reproducible indications of qualitative properties comprising:

"(a) preparing blind test samples of *predetermined* temperatures, amounts and concentrations;

"(b) submitting at least one sample to each observer of a group large enough to reduce observation errors to allowable experimental limits and under uniform illumination conditions;

"(c) causing each observer

"(i) to subject the sample to the same sensory test for one particular indefinable, sense-perceptible qualitative property and

"(ii) to indicate, within a *predetermined* range of time following the beginning of such test, his sensory reaction to the qualitative property tested,

the indications thus obtained from the group being correlatable in well-known ways to evaluate the property tested."

1. Act of Feb. 9, 1893, c. 74, sec. 9, 27 Stat. 436; March 2, 1927, c. 273, sec. 11, 44 Stat. 1336; March 2, 1929, c. 488, sec. 2(b), 45 Stat. 1476; Aug. 5, 1939, c. 451, sec. 4, 53 Stat. 1212, 35 U.S.C.A. § 63.

2. Act of Feb. 9, 1893, 27 Stat. 435, c. 74, sec. 7; March 3, 1901, 31 Stat. 1225, c. 854, sec. 226; March 3, 1921, 41 Stat. 1312, c. 125, sec. 12.

28

 We believe the District Court's holding to be correct on all three grounds. While there is no case precisely in point, and while the tests of what constitutes a patentable process are necessarily vague because of the great variety of subject matters with which the Patent Office and the courts must deal, it seems clear that appellant's claims do not constitute a "new and useful art, machine, manufacture, composition of matter, or any new and useful improvements thereof," within the meaning of section 4886 of the Revised Statutes.[3] Cochrane v. Deener, 94 U.S. 780, 24 L.Ed. 139; Greenewalt v. Stanley Co. of America, 3 Cir., 54 F.2d 195, 196; 1 Walker, Patents, 39–41 (1937).

Appellant's claims also lack definiteness. Predetermined, according to appellant's own definition, merely means determined beforehand. If appellant desired to patent detailed controls over the testing process, they were not expressed in its claims. If all that is asserted as invention is the use of controls as such, then the prior art precludes issuance of a patent. At best, the record appears to show that appellant has developed methods for testing its own product which enable it to gauge with some accuracy the preferences of its customers, and to put on the market a product more pleasing to those customers than might otherwise be the case. There is evidence also that other companies have been permitted by appellant to acquire knowledge of its testing methods, and have benefited therefrom. We can assume that appellant developed its method through "intelligent, well trained and persistent experiment, acting in the light of the defects which past experience had developed." But that is not enough. General Motors Corp. v. Preferred Elec. & Wire Corp., 2 Cir., 109 F.2d 615, 616. The showing here is not sufficient to bring appellant's testing methods into the realm of patentability.[4]

Industry has traditionally sought to de-termine consumer reaction in order to develop better products, and ones progressively more pleasing to the public. To give appellant a monopoly, through the issuance of a patent, upon so great an area in the field of marketing and determination of consumer preference would in our view impose without warrant of law a serious restraint upon the advance of science and industry.

Upon examination of the record, we find no ground for reversal. The judgment of the District Court therefore should be

Affirmed.

---

3. Act of March 3, 1897, c. 391, sec. 1, 29 Stat. 692; May 23, 1930, c. 312, sec. 1, 46 Stat. 376; Aug. 5, 1939, c. 450, sec. 1, 53 Stat. 1212, 35 U.S.C.A. § 31.

4. See Biesterfield, Patent Law 4–5 (1949), quoting Judge Learned Hand in Kirsch Mfg. Co. v. Gould Mesereau Co., 2 Cir., 6 F.2d 793, 794. See also Curtis Companies v. Metal Master Strip Service, 7 Cir., 125 F.2d 690, 692.