**NIXON et al. v. MARZALL, Commissioner of Patents.**

No. 10691.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 17, 1950.

Decided Nov. 9, 1950.

Estabrook, Washington, D. C., were on the brief, for appellant. Mr. William T. Estabrook, Washington, D. C., also entered an appearance for appellant.

Mr. Clarence W. Moore, United States Patent Office, Washington, D. C., with whom Mr. E. L. Reynolds, Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee.

Before MILLER, FAHY, and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

Questioned by this appeal is the judgment of the United States District Court for the District of Columbia in proceedings under § 4915, R.S., 35 U.S.C.A. § 63, in which plaintiffs, who are now appellants, sought a decree authorizing issuance to them of a patent on certain claims. The primary examiner of the Patent Office had rejected the claims and his decision had been approved by the Board of Appeals of the Patent Office.

The claims have to do with a process devised by Stanhope Nixon for making thermoplastic molding powder or pellets. The Nixon Nitration Works holds an assignment of Nixon's interest in his application for patent. The process in essence is as follows: Raw thermoplastic material such as cellulose acetate is physically mixed with a plasticizer, dyes and pigments to form a solvent-free dry mix from which all moisture in excess of 0.5% is removed. After the drying process this granular mix is fed into a heated extrusion machine where it is subjected to heat and pressure and from which it is extruded in rods of colloidized, plasticized, thermoplastic material. When these rods have been cooled so as to harden they are chopped into pellets, which constitute the molding powder or pellets. This finished product is free of "fines," that is, the pellets are accompanied by no fine particles of the same material. The pellets are used in other machinery for the making of plastic molds; but this case involves only the making of the pellets themselves.

The principal contribution claimed for the Nixon process over those disclosed by

Mr. Clarence B. Des Jardins, Cincinnati, Ohio, with whom Messrs. Howard T. Keiser, Cincinnati, Ohio, and Watts T.

the prior art is that it eliminates fines. This is an improvement because the fines which persisted in previous processes interfered with the efficiency of the molding machine in which the pellets or powders are used in the molding of plastic articles. Fines tend to clog or jam the molding machine and also by scorching and burning lead to overheating of the cylinder of this equipment. The improvement wrought by Nixon, coupled with the uniform size of his pellets, met with commercial acceptance of a significant character.

The Patent Office, and also the District Court after a trial *de novo* in accordance with § 4915, supra, found nonpatentability because of lack of invention. The court found that the Conklin patent, No. 2,048,686, of July 28, 1936, disclosed a dry mix process for the production of colloidized molding powders or pellets from cellulose acetate, in which process the material was dried to a moisture content below 0.5%, then mixed with a plasticizer and any other additions, such as a pigment, then kneaded on heated rolls whereby it was converted to a homogeneous mass and into a colloidized material. The findings of the court continue, "The plasticized sheet formed on the heated rolls may be cooled and broken up or granulated into small particles to produce granular molding powders." The court also found that a second patent to Conklin of April 18, 1939, No. 2,155,303, with some change in sequence in the process, disclosed a dry mix for the production of colloidized molding powder or pellets. In this process the mix is passed through heated rolls and thereby homogenized before the removal of the moisture. On December 9, 1941, as the District Court also found, a patent to Moss, No. 2,265,303, dealt with the same general problem, including the use of an extrusion machine which converted into a homogeneous powdery or granular form cellulose acetate mixed with water or other nonsolvent and sprayed with a liquid plasticizer. The extruded rods were disintegrated or broken up into granules, with the assistance of cutter blades. The District Court found also that a British patent of January 8, 1935, No. 422,232, issued to the Celluloid Corporation, related generally to the molding of thermoplastic material containing cellulose acetate, a plasticizer, and any other additions, such as a pigment, and used a heated extrusion machine in converting or colloidizing the material from which molding powders or pellets were made. The material was chopped with a reciprocating knife on leaving the extrusion nozzle. Other patents are referred to in later years in which extrusion machines appear. There is no doubt as to the sufficiency of the evidence to support these findings of the District Court.

The court concluded that the two Conklin patents, Nos. 2,048,686 and 2,155,303, "indicating why and showing how cellulose acetate may be dried to remove all moisture in excess of 0.5%, and the Moss patent, No. 2,265,303, and British patent, No. 422,232, establishing that such material with a plasticizer may be subjected to heat and pressure in an extrusion machine the same as on heated rolls, thereby to colloidize it," meet all the essential features recited in the claims involved in this appeal.

The essence of the manufacture of the powders or pellets to enable them to be used in molding is to gather and mix the appropriate ingredients, to dry them so that the moisture content is not more than 0.5%, to homogenize the mixture, and to break or cut the material into powder or pellets. All of this had been accomplished by the art as it existed prior to the Nixon processes. The prior art had also made use of a heated extrusion machine to colloidize the material. In removing the moisture several methods had been used, including pan driers, whereas Nixon used a vibrating plate lamp drier. The prior art had used steamheated rolls to knead the material whereas Nixon accomplished the homogenizing by the use of the heated extrusion machine. Such a machine had been used in the prior art at an earlier stage of the colloidizing process.

From the foregoing analysis of the situation the findings of the District Court that the prior arts in their combined

teachings had met all the essential features recited in the claims is not so lacking in support as to justify us in holding such findings to be clearly erroneous. We do not question that the variations initiated by Nixon had the very desirable effect of eliminating fines and of making the manufacturing process more commercially acceptable. But we nevertheless are faced with the basic developments prior to his entry into the field. These contained all the essentials. The principles relied upon by appellant, that "the fact that steps in a process are old does not negative inven- tion," and that commercial success is a factor to be considered in favor of patentability, are not disputed.[1] Nevertheless it must appear that the claims presented as the basis for a patent are the product of creative talent. The ultimate conclusion of the District Court on this point adverse to appellant is not so lacking in support as to justify us in overturning it within the rule governing this appeal, recently reviewed by us in Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. 210, 181 F.2d 280, decided February 27, 1950.

Affirmed.

1. See Gilbert v. Marzall, 87 U.S.App.D.C. —, 182 F.2d 389, decided May 15, 1950; Seagram & Sons, Inc. v. Marzall, 86 U. S.App.D.C. 100, 180 F.2d 26, decided January 23, 1950.