**CLARKSON MFG. CO. v. MARZALL, Commissioner of Patents.**

No. 10936.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 20, 1951.

Decided Feb. 14, 1952.

John H Bruninga, St. Louis, Mo., with whom Richard G. Radue, Washington, D. C., was on the brief, for appellant.

H. S. Miller, U. S. Patent Office, Washington, D. C., with whom E. L. Reynolds, Solicitor, U. S. Patent Office, Washington, D. C., was on the brief, for appellee.

Before KIMBROUGH STONE, Circuit Judge (Retired) sitting by designation, and FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a suit under R.S.4915, 35 U.S.C.A. § 63, to obtain a patent on a piece of mining equipment.

Appellant's machine is used in the loading of coal in the mine. It suggests, in its general outline, a mechanical crocodile. The head (the "loader-gatherer") is equipped with steel teeth which bite into the coal; the body ("chassis"), which rests on wheels, carries the operator and contains the motor and controls. A conveyor system starts at the head and runs back over the body, ending in an extended "conveyor-boom" or tail. This carries the loose coal from the face of the vein and discharges it into a car at the rear of the machine.

The feature of the machine stressed by appellant in the present suit relates to the construction of the conveyor-boom.[1] It ap-

1. This suit, brought by plaintiff-appellant as assignee of John L. Clarkson and Allton B. Jackson, relates only to claims 22–29, inclusive, of the application. (Application No. 349,488, filed August 2, 1940; continued by No. 517,295, filed January 7, 1944.) Certain other claims of the application have been granted. In addition, appellant has been granted a patent covering the loader-gatherer

pears that most earlier machines used in the industry had rigid booms[2] which protruded upward to such an extent that they frequently became wedged against the low, irregular ceilings of the mine tunnels.

Appellant has met this problem by hinging the conveyor-boom about half-way down its length, jointing it in such fashion as to permit extensive downward movement. The jointed boom is equipped with two hydraulic jacks, enabling the operator to raise or lower the two sections of the conveyor independently. As a result of this flexibility, the conveyor system can be depressed to such an extent that the whole machine can enter tunnels of minimum height (said to be as low as 28 inches), and can accommodate itself to dips or rises in the mine floor and ceiling. Substantial commercial success has been the result.

Appellant's achievement in giving flexibility to the conveyor-boom was not, however, unanticipated. Whaley had already patented a coal-mining machine having a hinge or pivot in the middle of the boom; this was so designed as to allow the operator to depress the tail of the boom sufficiently to keep it parallel to the main chassis. A hydraulic jack, controlled by the operator, was provided to power the up-and-down movement. Whaley, No. 1,839,625, January 5, 1932. Further, McCraw had patented a conveyor system for logs, which disclosed how independently controlled pivots could be inserted at various points in such a conveyor, so as to deliver material at a high level or a low, as desired by the operator. McCraw, No. 2,141,482, December 27, 1938. Other patents also pointed toward a solution of the same general problem.[3]

Appellant improved on Whaley (1) by substituting a pivot of a type which permitted greater maneuverability of the tail section, and (2) by adding a second hydraulic jack so that the two sections of the boom could be raised or lowered separately. Practical improvement over the McCraw concept, as applied to coal mining, was also substantial. The Patent Office considered, however, that these improvements were obvious and did not involve more than the application of standard mechanical skills. The claims in suit were therefore rejected on the ground, *inter alia*, of lack of invention. The District Court made like findings.

Our examination of the prior patents and of the testimony and exhibits leads us to the conclusion that these determinations of the Patent Office and the District Court had a reasonable basis. Indeed, we do not see how they could have found otherwise. Once the use of a pivoted conveyor became known to the industry through Whaley's machine, the substitution of a pivot similar in character but permitting a greater angle of dip would hardly appear novel or unexpected. The same can be said of the addition of a second hydraulic jack. Toledo Pressed Steel Co. v. Standard Parts Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed 1334. The fact that the McCraw machine was patented as a conveyor for logs does not, of course, make its disclosures irrelevant in the coal mining context, Reed v. Coe, 76 U.S.App.D.C. 369, 132 F.2d 599, nor does its lack of hydraulic mechanisms deprive it of present consequence. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 89–91, 62 S.Ct. 37, 86 L.Ed. 58; Gilbert v. Marzall, 87 U.S.App. D.C. 1, 6, 182 F.2d 389, 394.

In view of this conclusion, we do not reach the other contentions of the parties. The judgment of the District Court will accordingly be affirmed.

portion of the machine. (No. 2,370,147, February 27, 1945.)

2. See Joy, No. 1,619,260, March 1, 1927; Cartlidge, No. 2,062,555, December 1, 1936; Doberstein, No. 2,210,655, August 6, 1940; Cartlidge, No. 2,216,546, October 1, 1940. The boom in Joy, though in a single rigid section, swings in a vertical plane and can be raised and lowered by a hydraulic jack.

3. See the patent to Joy, described in footnote 1, supra, and the patent to Levin, No. 2,047,589 (the boom is jointed, the rear section yielding to prevent lodgment against the ceiling).