28 C.C.P.A.(Patents)

## In re HAIR NET PACKERS, Inc.

### Patent Appeal No. 4383.

Court of Customs and Patent Appeals.

Nov. 8, 1940.

Charles M. Palmer, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This appeal involves an application to have registered in the United States Patent Office the notation "Professional" as a trade-mark for hair curlers, hair winders, hair clamps, hair pressers, hair pins and hair rollers. The application was denied by the Examiner of Trade-Marks, whose decision was affirmed by the Commissioner of Patents.

In the course of his statement, following the appeal to the commissioner, the examiner said:

"* * * The mark is refused as not a trade-mark. It is clear that the highly-trained technicians of the beauty shops are fairly described as 'professionals'. If they were not such, discriminating ladies would no more patronize them than they would an inexperienced doctor. The goods listed

may or may not be of the type specially designed for professional use. They may, indeed, be the simplest things suitable for use by the uninitiated; but their denomination as 'Professional' indicates that they are specially adapted for use by the highly-trained technicians who minister to the beauty of the feminine public. Applicant's advertisements state: 'Used by Famous Hairdressers'.

"A mark is to be regarded as descriptive whether or not it actually describes applicant's goods if it describes the like goods of others (Ex parte Brady, 253 O.G. 954).

"Many decisions have been cited by the Examiner of alleged word-marks held not to be trade-marks at all. Attention may be called, however, to In re Brunswick-Balke-Collender Company, 421 O.G. 229; [Id.], 56 F.2d 890 [19 C.C.P.A., Patents, 1055], in which the notation 'League', as applied to bowling pins, was held not to be a trade-mark, but merely to indicate professional origin as emanating from or adopted for some league.

"It is thought the marks lacks trade-mark significance."

The commissioner in affirming the decision of the examiner said:

"In the brief it is stated that 'applicant's goods are for general use by all of the public including amateurs, highly trained technicians, and even others not belonging in either of these classifications.' On the specimens filed with the application, however, 'showing the trade-mark as actually used by applicant upon the goods,' appears the notation: 'Used by leading hairdressers.' To some extent, at least, it would seem that applicant has thus intended its mark to convey the information suggested by the examiner.

"Whether or not the mark is entirely devoid of trade-mark significance need not be determined here, because if it is descriptive of the goods the fact that it may also denote origin does not cure its nonregistrability under the Act of 1905.

"It is my opinion that the mark is descriptive, and for that reason the examiner's refusal to register is affirmed."

Since we are certain that the term "Professional," as applied to the goods listed in the instant application for registration, is clearly descriptive within the meaning of the statute, we are in agreement with the conclusions reached by the tribunals below.

The pertinent part of section 5 of the Trade-Mark Act of February 20, 1905, as amended, 15 U.S.C.A. § 85, reads as follows: " * * * That no mark which consists * * * merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods * * * shall be registered * * *."

This provision, of course, must be considered in connection with the mandatory provision of said section 5 which states that: " * * * no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trademark on account of the nature of such mark unless [etc.]."

Of course it is obvious that if the mark is descriptive, it does not distinguish the goods of one from those of another.

Appellant argues in this court that there are only a few of the many millions of certain of the articles upon which it uses its trade-mark which are used by the beauty parlors or in the hairdressing trade. It contends that the term "Professional" applied to some of the articles involved *"is suggestive of one of the desirable characteristics and consequently such expression adds prestige to the item"* and that the mark is *"specifically suggestive without being descriptive."*

It is sometimes difficult to determine when a mark is suggestive only, although the courts have frequently spoken on this question, but it seems clear that in the instant case appellant wishes to convey the information by its trade-mark that its goods are those that are used by professional hairdressers.

Some argument was made to the effect that hairdressing is not a profession. This leads us to consider the meaning of the term "professional." In Webster's New International Dictionary a distinction is made between the terms "profession" and "professional" and the latter term is defined as follows: "2. *a.* Engaged in by professionals; as, a *professional* race;—opposed to *amateur.* *b.* Engaging in a profession or, *by extension,* any calling as a means of livelihood or for gain; as a *professional* golf player;—opposed to *amateur.* ["By extension" italicized by us.]"

The term "professional" is broad enough to include hair dressers and it is obvious from all the facts at bar that appellant's

adoption of the mark was evidently prompted by this consideration.

■ The contention that appellant's goods are for the most part used by those who are not professionals is unavailing. This court and other courts have frequently held that as to registrability, it does not help the situation for a trade-mark to be misdescriptive rather than descriptive. This is the view which was entertained by the trade-mark examiner when he stated that a mark was to be regarded as descriptive when it "describes the like goods of others." This court in a number of cases has held to the same effect. It will be sufficient to cite this court's decision in the case of In re Bonide Chemical Co., Inc., 46 F.2d 705, 707, 18 C.C.P.A., Patents, 909, which involved the registrability of the term "Crow-Tox" applied to a preparation used in protecting seeds against birds and animals. Among other things it was urged there, after admitting that "Crow-Tox" meant crow poison, that there was no poison contained in the preparation. In affirming the decision of the commissioner denying registration, we said:

"We think, therefore, that 'crow-tox' is in all respects, as regards its meaning, the same as 'crow-poison.' Hence the effort to register it under appellant's amended application raises the somewhat novel question whether, under the Registration Statute, a word may be registered as a trade-mark when it is used upon a preparation which it, in fact, misdescribes. It does not speak the truth. If it did, admittedly, it would not be registrable. Since it speaks falsely, may it be admitted as not descriptive?

* * *

"We are at a loss to understand how one can acquire legal title—an ownership protectable in the courts—of a mark (there being no ownership except when predicated upon use) which it is proposed to apply to a product, and by it indicate that the product is of a particular character or quality, when, in fact, it has no such quality, and then secure registration of the mark, on its face descriptive, upon the statement that it is not descriptive because false and misleading. It is inconceivable that Congress ever intended that any such result should be accomplished under the Registration Statute, notwithstanding the declaration that no mark, save certain excepted ones, should be refused registration."

The principle announced in the "Crow-Tox" case, supra, is so thoroughly settled as to require no further citation of authority.

Appellant here relies upon such cases as In re One Minute Washer Company, 95 F.2d 517, 25 C.C.P.A., Patents, 978, which involved the trade-mark "One Minute" for washing machines, and Van Camp Sea Food Co., Inc., v. Alexander B. Stewart Organizations, 50 F.2d 976, 18 C.C.P.A., Patents, 1415, which involved the registration of "Chicken of the Sea" for tuna fish. In both cases it was held that the marks were not descriptive; that "One Minute" was suggestive and not descriptive of the speed of the machine, and that "Chicken of the Sea" was suggestive of a characteristic of the goods but in no sense descriptive. Those and like cases are distinguishable from the case at bar.

The term "Professional" is more than suggestive. It describes the quality of the goods as being of the character used by professional hairdressers, and appellant may not have a monopoly upon the term in describing its goods even though it is in part misdescriptive of them.

We think that our conclusion here is supported by our decision in the case of In re Brunswick-Balke-Collender Co., 56 F.2d 890, 19 C.C.P.A., Patents, 1055, in which it was held that the word "League" was not registrable as a trade-mark for bowling pins. In that case it appeared that the American Bowling Congress, under its rules, regulated the size and weight of official pins, and that certain of the games were called "League games." We there said: " * * * The word 'League,' as used by the appellant here, is, to our mind, clearly either descriptive or misdescriptive. In either event, it ought not to be registered as a trade-mark. Every maker of bowling pins ought to be able to call his pins 'League' pins, if they comply with the rules generally obtaining in league games."

A case quite in point is In re National Phonograph Co., 29 App.D.C. 142. The term sought to be registered there was "Standard" as applied to phonographs. It appeared that the phonographs to which it was applied were of inferior quality and not standard. After holding that the term was descriptive within the meaning of the then existing statute, prohibiting the registration of descriptive marks, the court said: "We agree with the Commissioner that the applicant's claim to use 'standard' as a trademark is in no wise strengthened because the applicant contends that it only

applies the word to machines of inferior design and which are not in any sense standard. The word cannot be used, whether it be truly descriptive or falsely descriptive."

The decision of the Commissioner of Patents is affirmed.

Affirmed.

GARRETT, Presiding Judge (dissenting).

I do not agree with my associates and the tribunals of the Patent Office that the notation "Professional" consists merely in a word descriptive (or misdescriptive) of the goods, or of the character or quality of the goods, to which appellant applies it.

Under some of the definitions of "Professional," the notation may indicate, or suggest, the character of some of the users of the goods (although I do not wish to be understood as passing upon the question of whether hairdressing is a profession as distinguished from a trade), but as to the per se character or quality of the goods nothing is described, nor is anything even suggested in that respect.

I am unable to see wherein the Bonide Chemical Co. case, cited by the majority, has any application here. It was there held, in effect, that the notation "Crow-Tox," used upon a preparation for protecting seed against birds and animals and for invigorating seeds, was, upon the record presented ("Crow-Tox" being the equivalent of "Crow-Poison," and the preparation being conceded to be non-poisonous), misdescriptive of the preparation.

The Brunswick-Balke-Collender Co. case, cited by the majority (and by the Patent Office examiner), seems to me clearly distinguishable from the instant case. We there refused registration of the word "League" as a trade-mark for bowling pins. The record disclosed that an organization known as the American Bowling Congress had adopted rules regulating the size and weight of official pins for use in league bowling games. Clearly, the word "League," as it was there proposed to use it, would have been descriptive of a character or quality—size or weight—of the pins.

In the National Phonograph Co. case, also cited by the majority, obviously the word "standard," which it was sought to register for use on phonographs, had particular reference to a character or quality of the goods—not to the users of the goods.

In truth I have found no decided case which, in my opinion, properly may be regarded as on all fours with this case. With me the issue here is largely a matter of first impression.

I do regard the case of In re National Candy Co., 35 App.D.C. 351, somewhat analogous. The applicant there sought to register "Navy" for use on candy, some of which was sold as supplies for use by the personnel of the Navy. The court held the mark to be purely fanciful and arbitrary as applied to candy. It seems to me that such is the situation with respect to "Professional" applied to hair curlers, hair winders, hair clamps, hair pressers, hair pins, and hair rollers.

It is my view that appellant is entitled to the registration here sought.