**GILBERT et al. v. MARZALL, Commissioner of Patents.**

**No. 10208.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 7, 1950.

Decided May 15, 1950.

Mr. Henry L. Burkitt, New York City, with whom Mr. Robert I. Dennison, Washington, D. C., was on the brief, for appellants.

Mr. E. L. Reynolds, Solicitor, United States Patent Office, Washington, D. C., with whom Mr. W. W. Cochran, former Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee. Mr. George Morris Fay, United States Attorney, Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, PRETTYMAN, and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing a complaint brought under R.S. § 4915, 35 U.S.C.A. § 63, to authorize the issuance of a patent.

Appellants' machine is a device for spreading and folding layers of cloth or similar material. A carrier travels down a long table, spreading the cloth as it moves. Means are provided for catching and holding the cloth at the end of the table; the carriage device then travels back, spreading a new layer of cloth. In this way, layers of cloth of precise length are built up, the ends being firmly gripped by a mechanism which adjusts upward as the pile increases in depth. The cloth is thus prepared so that identical cutting of the several layers is possible in a single operation.

Devices of this kind, which are of obvious utility in the mass production of clothing and other fabric or paper articles, have long been in use. The record shows, among others, the following references: Isaacs and Pellar, No. 819,548, of May 1, 1906; Isaacs, No. 1,338,570, of April 27, 1920; Sussman and Hill, No. 1,257,421, of February 26, 1918; Cutter, No. 1,866,088, of July 5, 1932; Schneider, No. 2,203,970, of June 11, 1940. These machines have a general family resemblance. They differ mainly in their approach to certain basic problems, namely: (a) spreading the cloth smoothly, (b) gripping it firmly at the ends, (c) producing layers of equal length, and (d) lifting the mechanism to accommodate the increasing thickness of the pile of cloth.

The Patent Office has recognized that appellants' invention has novelty, and has granted 41 of their claims. The present suit under R.S. § 4915 seeks relief with regard to (a) certain claims (58 to 63, inclusive) not ruled on by the Board of Appeals, and (b) certain rejected claims.

I.

We will first consider the District Court's conclusion of law concerning claims 58 to 63 inclusive, to the effect that they "are not properly before the Court for consideration on their merits." These claims were prepared and dealt with under the following circumstances: Applicants filed an appeal with the Board of Appeals in the Patent Office on December 12, 1944, from the examiner's rejection of certain of their claims. On February 7, 1945, applicants filed with the examiner a proposed amendment setting up additional claims (including, among others, 58-63), for the stated purpose of avoiding argument before the Board on the pending appeal. The examiner on February 10, 1945, filed a statement with the Board, discussing the matters on appeal. On the same day he filed a "supplemental statement" with reference to the proposed amendment dated February 7, 1945; in this he said in part:

"* * * the amendment of February 6, 1945 [sic] was filed but has not been entered in the case for the reason that it is not in full accord with the amendments proposed at the interview and does not place the case in condition for allowance. Furthermore, the amendment is not accompanied by a showing, duly verified, of good and sufficient reasons why it was not presented promptly after the interview held prior to the filing of the appeal as required by the third paragraph of Rule 68.

"* * * Claims 58 to 61 inclusive are not deemed to be patentable over the references relied upon and for the reason stated in the rejection of claims 49 to 51 in the original Examiner's Statement; claims 62, 63 are not deemed to be patentable over Isaacs et al 819,548 on the ground that the cam plates 36 provided upon the fabric guiding and end-fold forming means 26, 27 of the reference are held to be the patentable equivalent of the pair of pivotally mounted arms required by these claims, also the alternately operative cloth guiding and end-fold forming means 26, 27 of the reference is held to be the patentable equivalent of the reversible fabric guiding means required by these claims." (App. 135)

The Board of Appeals handed down its decision on April 25, 1946, giving the applicants relief in respect of certain of the claims presented in the original application. In its opinion, the Board referred to claims 58 to 63 in the following terms:

"The Examiner * * * stated that he did not consider the remaining proposed claims to be patentable over the art of record.

"Since this proposed amendment has not been entered we must hold that it is not before us for consideration." (App. 141)

After receiving a petition for reconsideration the Board of Appeals, on July 22, 1946, said: "Our reasons for not considering the proposed amendment filed after the appeal was taken were that the Examiner had refused to enter the same. Under these conditions, as a rule the Board must refuse to consider the amendment. Whether or not a proposed amendment shall be formally entered is an administrative matter which does not come within our jurisdiction. We see no error in refusing to consider the proposed amendment." (App. 144)

Thereafter, on September 25, 1946, applicants filed a further amendment, following conferences with the examiner, in which, in addition to setting forth certain new claims (which were, in part, claims 60–63 in modified form),[1] appellants also attempted to have claims 58–63 considered.

The examiner replied by saying, under date of December 17, 1946: " * * * The amendment of February 7, 1945, stands unentered for the reasons stated in the examiner's supplemental statement on appeal." (App. 153)

A second appeal to the Board of Appeals was then taken by the applicants, by notice dated February 3, 1948, based in part on the action (or lack of action) with respect to claims 58–63. The examiner was affirmed by the Board on July 28, 1948. The Board said, with respect to claims 58–63: "This is not an appealable matter and we will not consider this ground in this decision." (App. 177) For more than three years, therefore, the applicants persisted in endeavoring to raise this matter before the Board; just as consistently, the Board held to its original position.

In this action under R.S. § 4915 (brought in September 1946), the applicants seek an adjudication that they are entitled to a patent covering claims 58 to 63. R.S. § 4915 establishes an equitable proceeding, in which new evidence may be received. Butterworth v. United States ex rel. Hoe, 112 U.S. 50, 61, 5 S.Ct. 25, 28 L.Ed. 656; International Standard Electric Corp. v. Kingsland, 83 U.S.App.D.C. 355, 169 F.2d 890. But the statute was not intended to authorize the courts to consider claims not considered on the merits by the Patent Office. Lucke v. Coe, 63 App.D.C. 61, 69 F.2d 379; Chessin v. Robertson, 61 App.D.C. 376, 63 F.2d 267, certiorari denied 289 U.S. 725, 53 S.Ct. 523, 77 L.Ed. 1475; Durham v. Seymour, 6 App.D.C. 78. The statute expressly provides that when a patent application is "refused by the Board of Appeals", a suit in equity may be brought to obtain a patent for the applicant's invention "as specified in his claim." This means that the District Court is entitled to have the benefit of the decision of the Board of Appeals on a particular claim before the applicant can seek to have adjudication of the matter by bill in equity under R.S. § 4915. Cherry-Burrell Corp. v. Coe, 79 U.S.App.D.C. 124, 143 F.2d 372, cited with approval in Hoover Co. v. Coe, 325 U.S. 79, 90 n. 31, 65 S.Ct. 955, 89 L.Ed. 1488. As this court said in the Cherry-Burrell case: "What the District Court was asked to do, therefore * * * was to take jurisdiction and determine the patentability of claims which had been refused entry by an Examiner, and which had been refused consideration by the Board of Appeals; the patentability of which, in short, had never been determined by the Patent Office. Whatever right, if any, appellant may have had to compel determination by the Patent Office [Cf. United States ex rel. White v. Coe, 68 App.D.C. 218, 95 F.2d 347; Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 96 F.2d 518] of the patentability of these new claims, it had none which required the District Court to make such a determination. There was, here, no refusal of a patent by the Board of Appeals, within the meaning of Section 4915 * * *. Appellant is complaining, instead, of the

1. The amendment stated: "Claims 60, 61, 62 and 63, as amended, in accordance with the understanding reached, are being presented as claims 67, 68, 69 and 70." (App. 149–50)

Board's refusal to *consider* new claims, upon an untimely petition for reconsideration of its decision concerning other claims. The law, as declared in Lucke v. Coe [63 App.D.C. 61, 69 F.2d 379], and in Shoemaker v. Robertson [60 App.D.C. 345, 54 F.2d 456], is equally applicable in the present case. It was not the intention of Congress, in enacting Section 4915, that the functions of the Patent Office should be transferred to the District Court." 79 U.S. App.D.C. at 125, 143 F.2d at page 373.

■ In the present case, the applicants rely on the fact that the examiner, although refusing to enter claims 58 to 63 for consideration, made positive statements to the Board of Appeals indicating that in his view those claims were not patentable, for reasons which were briefly set forth. From this they conclude that the examiner gave "the full and complete consideration to these claims which the Court requires for its guidance." They contend that in numerous instances the Board of Appeals has in fact considered claims after refusal of entry by an examiner. That may well be. But in this case the Board of Appeals refused to consider claims 58 to 63, and rendered no decision concerning their patentability. It is thus immaterial whether the examiner considered or passed on them, because under the statute the courts are entitled to the views of the Board of Appeals on the merits as a prerequisite to the maintenance of suit under R.S. § 4915. It can hardly be suggested that applicants lacked an adequate administrative remedy in the Patent Office, if there was an improper refusal to admit an amendment,[2] or that they lacked judicial remedies as a last resort. Coe v. United States, 65 App.D.C. 387, 84 F.2d 240; Edgerton v. Kingsland, 83 U.S.App.D.C. 8, 168 F.2d 128; Butterworth v. Hoe, 112 U.S. 50, 5 S.Ct. 25, 28 L. Ed. 656; Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. 555; Shoemaker v. Robertson, 60 App.D.C. 345, 54 F.2d 456. Instead of pursuing the established procedures, they continued to negotiate with the examiner for the entry of other claims in substitution for claims 58 to 63, and continued to press the Board of Appeals for reversal of the examiner's original action. They cannot now seek procedural relief in this suit under R.S. § 4915, nor ask the courts to consider claims which have not been considered by the Board of Appeals.

## II.

The remaining issues in the case relate to the conclusion of the District Court (in harmony with that of the Board of Appeals) that appellants were not entitled to a patent "containing any of claims 36, 38, 40, 42, 49 to 55, inclusive, 74 and 76 to 79, inclusive." On this appeal, applicants withdrew claims 36, 38, 40 and 42. Of the remainder, claims 49 to 55 relate to the "catcher and box" portion of the machine, i. e., the mechanisms which grip, fold and fasten the fabric. Claims 74, 76, 77, 78 and 79 concern the sprocket and chain device which lifts the "box" to higher levels as the pile of fabric layers becomes progressively thicker.

The question is whether appellants are entitled to a patent covering any or all of these rejected claims.

### Claims 49 to 55, Inclusive.

Typical of this group is claim 49, which reads: "49. In a machine for laying down upon a surface successive superimposed layers of sheet material, a carriage for movement relative to the surface, the carriage having means for guiding fabric into position upon the surface and for forming the end folds of the layers, means for limiting movement of the carriage relative to the surface, means for gripping a fold distended by the end-fold forming means to retain it in distended form, and means carried with the end-fold forming means for guiding the gripping means into the end-fold forming means at the carriage movement limit."

2. See Rules of Practice of the U. S. Patent Office, Rules 127, 181 (Petition to Commissioner of Patents); 2 Walker, Patents 847 (Dellers ed. 1937); cf. Minnesota Mining & Mfg. Co. v. Coe, 79 U.S.App. D.C. 59, 143 F.2d 12.

Claim 50 is similar, and specifies that the "guiding and forming means" shall include a U-shaped member [known as the "box"]. Claim 51 speaks of "means for gripping a fold distended by the member [the "box"] to retain it in distended form, and means pivotally mounted substantially medially of the extent of the arms of the member for guiding the gripping means between the arms of the U at the carriage movement limit." Claim 52 speaks of "means for elevating the end-fold forming means." Claim 53 speaks of the same elevating means "while the means for guiding the gripping means remains constantly in operative relation to the end-fold forming means." Claim 54 speaks of means for reversing the direction of the fabric guiding means at the carriage limit, "while the guiding means for the gripping means remains effective for each position of the fabric guiding means." Claim 55 is in effect a consolidation of claims 52, 53, and 54.

The broad sweep of the language in which these claims are set forth is immediately apparent. Appellants are, of course, free to express themselves in this all-embracing fashion—but at the risk of claiming so great a portion of the art as to fail to define their own distinctive contributions.

The District Court has found, as did the Patent Office, that these claims are met by the Sussman patent, No. 1,257,421, and do not define invention over Isaacs patent, No. 1,338,570, in view of Isaacs patent No. 819,548. These findings, in our opinion, are consistent with and supported by the evidence. The rejection of claim 49 hardly admits of question, since the evidence showed that the Sussman patent covers a device which can reasonably be described, to repeat the language of claim 49, as "a machine for laying down upon a surface successive superimposed layers of sheet material," possessing (1) "a carriage for movement relative to the surface," (2) "the carriage having means for guiding fabric into position upon the surface," and (3) "for forming the end folds of the layers," as well as (4) "means for limiting movement of the carriage relative to the surface," also (5) "means for gripping a fold distended by the end-fold forming means

to retain it in distended form," and (6) "means carried with the end-fold forming means for guiding the gripping means into the end-fold forming means at the carriage movement limit." With regard to this last item, appellants strenuously argue that the Sussman machine does not move the "catcher" (gripping means) *into* the "box" (end-fold forming means), as appellants' machine does. But Sussman provides teeth which grip the fabric, and bars which guide the teeth into the fold-forming means. It is true that claims 50 and 51 speak of a "U-shaped member," whereas the corresponding portion of the Sussman machine is roughly "II" shaped; the function and structure, however, could reasonably be found to be substantially equivalent. And the Isaacs patents do include a U-shaped member serving the same purpose.

Claims 52 and 53 speak of means for elevating the fold-forming means; this is done in Sussman by a gear and screw. Claims 54 and 55 are similarly met by the gears, bars and reversing devices of Sussman. Appellants' choice of language is too broad: they have claimed too much. They have restated the prior art without setting forth their distincitve contribution or invention, if any, with clarity and precision.

### Claims 74, 76, 77, 78 and 79.

Typical of these claims is claim 74, which reads: "74. A machine for spreading sheet material to form successive superimposed layers of sheet material of substantially identical extent, the machine including means for guiding the sheet material to the position where the layers are to be formed, means for spreading the material and for forming end-folds therein, means for lifting and lowering the spreading-and-end-fold-forming means, the lifting-and-lowering means including a band anchored to the spreading-and-end-fold-forming means, rotatable members spaced apart and located substantially in a plane substantially parallel to the direction of movement of the spreading-and-end-fold-forming means, the band being trained around the members, and means for imparting rotation to one of the members, the rotation-imparting means being movable in a plane substantially

parallel to said plane of said members for imparting step-by-step motion to said member."

The essential question here (and as to claims 76 through 79, inclusive) relates to the "means for lifting and lowering." In appellants' machine, the "box" (fold-forming means) is lifted by an automatic sprocket and chain arrangement.

The District Court found that the claims here in question "do not define invention over the Cutter patent in view of the Schneider patent," and are thus unpatentable. It concurred in the position taken by the Patent Office.

The Cutter patent, No. 1,866,088, covers a machine roughly similar to appellants', and having a device for raising and lowering the "spreading and folding" means. This device consists of a screw, which is automatically turned higher by a ratchet when the carriage reaches an appropriate point, lifting the folder and enabling the next layer of fabric to be spread at a higher level. The Schneider patent, No. 2,203,970 also covering a machine generally similar to appellants', has a chain or band (on sprockets) for lifting the fold-forming device. The device, however, is not automatic, requiring hand operation.

The Patent Office argues in its brief:

"It would be a very simple matter to use a chain such as that of Schneider in place of the screw * * * of Cutter. It would merely be necessary to replace the screw by a chain mounted on upper and lower sprockets, the sprockets being located at the points where the upper and lower ends of the screw are shown in the Cutter patent, the lower sprocket being rotated by the pawl and ratchet mechanism which Cutter employs for rotating the screw * * *. This would involve no mechanical difficulty and would not materially change the operation of the device, and the resultant structure would fully anticipate the claims of the group under consideration.

"It is evident that a patent should not be granted whenever it is found convenient to substitute one common mechanical expedient for another. The patentee Cutter and others using this device are entitled to make such obvious changes as may be desirable without paying royalties to subsequent patentees. If they consider that, under some circumstances, a chain such as is shown by Schneider would be preferable to the screw * * * of Cutter, they should be free to use it. Invention is not involved in replacing one recognized mechanical equivalent by another unless some unexpected result is obtained thereby. No such result is produced in the present case. It is submitted, therefore, that claims 74, 76, 77, 78 and 79 call for nothing beyond the province of a mechanic of ordinary skill, and that the complaint was properly dismissed as to those claims."

Appellants make a forceful and appealing reply to this argument, saying, in part: "It is all well and good retrospectively to say that the construction the appellants made could have been made by any mechanic. The answer is, of course, that nowhere in the art has appellee shown the combination for producing this result. Appellee did not show how this change could be made. It relied upon the fact that Appellants had made that change."

It is, however, well established that "Where a patent includes a combination of elements, it is not necessary to establish anticipation that all of the elements be found in a single earlier patent or in a single device previously in general use. It is enough if the evidence, taken as a whole, discloses that all of the claimed elements are found in different prior patents in the art or in different devices previously in general use, and no new functional relationship arises from their combination." Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 10 Cir., 87 F.2d 26, 28. And in two cases involving far greater contributions to industry than appellants here offer, the Supreme Court, reversing the Second Circuit, held that the application of mechanical skills to an old problem, through a combination of known devices, did not in those instances constitute invention. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

Further, this is an area in which we must give great weight to the concurrent findings of the District Court and of the Patent Office. Abbott v. Coe, 71 App. D.C. 195, 197, 109 F.2d 449. But even exercising the full measure of latitude we have in dealing with problems of this sort, Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. —, 181 F.2d 280, after careful review of the record, we must still affirm the determination of the District Court.

### III.

Appellants urge upon us, as proof of invention, the commercial success of their machine, as compared with the pre-existing devices. Such success, assuming it to have been established, is at best some evidence of invention; certainly it is no substitute for the novelty and creation which are the pre-requisites of patentability. Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, at 487, 55 S.Ct. 455, 79 L.Ed. 1005.

A related contention is that the prior patents in the field (Sussman, Schneider, Isaacs, Cutter) fail in certain respects to show operative machines. But the evidence offered by appellants on this point was, to say the least, weak and inconclusive. We find nothing in the record to convince us of the alleged inoperativeness of those portions of the prior inventions which the Patent Office and the District Court found to have anticipated the claims here in issue. In any event, the inoperativeness of a machine as a whole, even if established, could hardly serve to render each and every portion of the machine (as described in the patent papers) worthless as a disclosure of a new and useful application of an art. Pickering v. McCullough, 104 U.S. 310, 319, 26 L.Ed. 749; Zephyr American Corp. v. Bates Mfg. Co., 3 Cir., 128 F.2d 380, 385.

We have noted that the Patent Office has allowed some forty-one claims made by the applicants. The merit of the invention is, to that extent at least, conceded. What the applicants are seeking to obtain in the present action is the allowance of further claims, to round out the patent and protect them in the full enjoyment of the claims already allowed. After examination of the record, we must conclude that they are not entitled to succeed in that effort.

The judgment of the District Court is accordingly

Affirmed.