GOLD SEAL COMPANY, Plaintiff,

v.

Sinclair WEEKS, Secretary of Commerce, and Robert C. Watson, Commissioner of Patents, and S. C. Johnson & Son, Inc., Defendants.

Nos. 1078-52, 1102-52.

United States District Court, District of Columbia.

March 24, 1955.

Amendment to Opinion April 20, 1955.

Edward B. Beale, Washington, D. C. (Beale & Jones, Washington, D. C.), Floyd E. Thompson, Chicago, Ill. (Johnston, Thompson, Raymond & Mayer, Chicago, Ill.), Paul, Moore & Dugger, Maurice M. Moore and Robert P. White, Minneapolis, Minn., for plaintiff.

E. L. Reynolds, Washington, D. C., Solicitor for Patent Office.

Francis C. Browne, William E. Schuyler, Jr., Andrew B. Beveridge, Mead, Browne, Schuyler & Beveridge, Washington, D. C., and Harold F. Greivelding-er, Racine, Wis., for Johnson Wax.

YOUNGDAHL, District Judge.

Plaintiff Gold Seal Company seeks a decree authorizing the Commissioner of Patents to register as a lawful trade-mark the words Glass Wax, used by plaintiff in connection with its liquid composition for cleaning glass and metal. S. C. Johnson & Son, Inc., has intervened, opposing the application for registration of this mark, seeking a declaratory judgment that the words Glass Wax do not constitute a lawful trade-mark, and counterclaiming for injunctive relief, profits and damages on the ground that the mark constitutes a false representation and description of the goods, thereby causing Johnson damage or the likelihood of damage.[1]

Plaintiff corporation adopted Glass Wax in September, 1945, as its mark for the product in question. Shortly thereafter plaintiff unsuccessfully invoked the provisions of the Trade-Mark Act of 1905 to obtain registration of the words (Gold Seal) Glass Wax.

Between 1945 and 1947 plaintiff's product met with significant commercial success. On December 16, 1947, plaintiff again filed an application to register the mark. This application was accepted and published on March 23, 1948. Four oppositions were filed against the application. Three were ultimately dismissed with prejudice. The fourth, filed by intervener Johnson, was the progenitor of the present controversy.

The opinion of the Examiner of interferences, who heard the opposition, was filed on May 4, 1950, while the Decision of the Commissioner was filed on September 14, 1951. The Examiner held the mark not deceptive, while the Commissioner found it unnecessary to determine this. Both of the Patent Office tribunals, however, denied registration of the mark, deciding that it was either merely descriptive or deceptively misdescriptive and refused to consider the application as one seeking registration based on secondary significance.

In the interest of clarity, the two principal questions involved—that of registrability and that of Johnson's counterclaims—will be treated separately.

I. Registrability of the Mark GLASS WAX:

Is the plaintiff, Gold Seal Company, entitled to have the words Glass Wax registered as a trade-mark for a "glass cleaner and polish" on the Principal Register under the Trade-Mark Act of 1946?

a. *Contentions of the parties:*

 Plaintiff contends that Glass Wax is a "technical" trade-mark under Section 45 of the Lanham Act,[2] it being a combination of words "adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others";[3] that it is not deceptive, nor is it merely descriptive, in that Glass Wax describes both a cleaner for glass and a cleaner for metal; that it is not merely deceptively misdescriptive in that it does not misdescribe a cleaner, a cleaner for glass, or a cleaner for metalware. Plaintiff further contends that should the Court find Glass Wax not a technical trade-mark, it should nevertheless register the mark in that it has acquired a

---

1. All questions involved in this suit, including that of jurisdiction, are controlled by the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., hereinafter referred to as the Lanham Act.

2. A "technical" trade-mark is nowhere defined by statute but is generally held to refer to a mark, fanciful or arbitrary

from the start, as opposed to one which may become registrable after acquiring a secondary meaning through use and public acceptance. In effect, it is a mark not prohibited by Sections 2(a) through 2(e) of the Lanham Act.

3. 15 U.S.C.A. § 1127.

"distinctive" or "secondary meaning" under Section 2(f) of the Lanham Act,[4] even though evidence of such distinctiveness was not considered by the Patent Office; that it can and should be considered by this Court, the Patent Office having erroneously failed to do so; and that no estoppel exists to prevent plaintiff from presenting registrability under Section 2(f) in this court.

The Patent Office, defendant, contends that the mark is in fact deceptive and does mislead; that such deception constitutes an absolute bar to registration regardless of what the Gold Seal Company intended, and regardless of whether or not any purchaser was injured; that the Government cannot and should not approve the use of any mark which actually misrepresents the goods to which it is applied, and since the product involved contains no wax or any border-line substance which might be considered a wax, since the word "wax" has a reasonably definite meaning, and since the words Glass Wax on a container of a liquid recommended for use on glass indicates that the product contains a wax in material amounts, the mark is deceptive. And further, the Patent Office maintains that since it is not such an anomalous false label in relation to the product that no one would be deceived by it, especially since some glass polishes do contain wax, it is not entitled to registration. If it is not deceptive in this way, the Patent Office asserts that the mark is merely descriptive or deceptively misdescriptive, for if the product does contain wax it is descriptive; if it does not, it is deceptively misdescriptive, since Glass Wax would be generally understood as referring to a product which, when applied to glass, leaves a wax film, or at least contains wax; that further, the way the seal is placed on the product indicates that *Gold Seal* represents the producer and Glass Wax describes the product; that plaintiff is cognizant of this as indicated by the fact that Glass Wax has never been used without being accompanied by the mark Gold Seal. Then, states the Patent Office, since the question of whether the plaintiff was entitled to registration under 2(f) was not before it, due to the form of plaintiff's application and failure of the required type of proof, so that no ruling was made on the merits of that question, this Court cannot now consider whether the refusal to accept the application as under 2(f) was correct and proper, nor the merits of plaintiff's claim under 2(f); that the claim for a technical trade-mark being distinct from a claim for a trade-mark based upon secondary significance, the Court, as well as the Patent Office tribunals, can pass upon one without having to pass upon the other. In short, the Patent Office takes the position that since registrability under 2(f) cannot be reviewed and considered here, the mark is not entitled to registration, but even if the Court were to consider, erroneously, secondary significance on the merits, plaintiffs have not established secondary significance.

S. C. Johnson & Son, Inc., intervener, backs up the assertions of the Patent Office and further contends that the words Glass Wax have not really been used as a trade-mark by Gold Seal Co.; that the controlling finding of the Patent Office that the words Glass Wax are deceptively misdescriptive must be ac-

---

**4.** Section 2(f) provides, as pertinent here, that unless a mark is expressly excluded for a reason as, for example, that it is deceptive, " * * * nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce." The applicant must establish such distinctive use, but "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next pre-

ceding the date of the filing of the application for its registration" shall be prima facie evidence of its having become distinctive.

In short, regardless of what the original significance of a mark may have been, whether merely descriptive or deceptively misdescriptive, it may be considered distinctive when it has acquired a secondary meaning which indicates the plaintiff's product alone.

corded the presumption of correctness, which has not been overcome, and which could only be overcome by a showing of distinctiveness which this Court is not entitled to consider since the Patent Office had not first considered this on the merits.

### b. Conclusions of fact and law:

 This is a trial *de novo*.[5] A long standing and consistent policy of this Court is to accord considerable weight to the rulings of the Patent Office, skilled and experienced as that office is presumed to be in the field of trade-mark law. Such rulings will not be overturned unless shown to be clearly erroneous or new and substantial evidence is offered. National Lead Co. v. Kingsland, D.C. D.C.1948, 74 F.Supp. 985, Abbott v. Coe, 1949, 71 App.D.C. 195, 109 F.2d 449. At the same time, the Court is entitled to rely more heavily on its own judgment where the case, as here, does not require intricate scientific analysis.

### 1. Section 2(a)—Deceptiveness

 Under Section 2(a), a mark cannot be registered if it "consists of or comprises * * * deceptive * * * matter". The Examiner of Interferences decided that the words Glass Wax were not deceptive under Section 2(a) while the Commissioner found it unnecessary to determine the issue.[6] The Court is well satisfied that the conclusion of the Examiner was correct and justified. He found that:

"* * * the record fails to show that the word Glass Wax is, in fact, deceptive under Section 2(a). On the contrary, the conclusion seems

justified from the voluminous record presented by the applicant that the term may be at most misdescriptive in the sense that such suggestion of deceptiveness may be overcome by a showing of distinctiveness under Section 2(f)." [7]

Of more immediate bearing, the Examiner decided:

"* * * While it would be naturally expected that housewives when asked whether Glass Wax contained wax, would answer the question in the affirmative, there is noththing in the Roper survey or in opposer's record which would show that anyone would have felt actually deceived if informed that there was no wax in the product. Both opposer's and applicant's records show, on the contrary, that practically all those who have actually used the product are highly pleased with its action whether it may contain wax or not." [8]

The Commissioner analyzed the problem in the following way:

"Expert opinion as to the chemical constitution of a wax (there are a number of waxes and sometimes several are used in a 'wax' composition sold over the counter) would be of little or no interest to the average customer who uses opposer's products, for the ordinary customer knows nothing of the chemical composition of a can of wax and cares less so long as the product satisfies his need." [9]

With this reasoning the Court agrees. No evidence introduced here shows it to

---

5. Jurisdiction is founded on Revised Statutes, § 4915, 35 U.S.C. § 63, now § 146, incorporated by reference in 15 U.S.C.A. § 1071.

6. The Commissioner having found the mark deceptively misdescriptive or descriptive only, being in full agreement with the Examiner on this point, and having refused to consider plaintiff's application as one under 2(f), considered it unnecessary to determine whether registration of the mark was barred as deceptive

under 2(a). See Decision of Commissioner, September 14, 1951, in the matter of Opposition Number 27, 543, S. C. Johnson & Son, Inc. v. Gold Seal Company, (hereinafter referred to as "Decision of Commissioner"), pp. 7–10, 11–13.

7. Decision of Examiner of Interferences, May 4, 1950, Opposition Number 27, 543, p. 17.

8. p. 19—Ibid.

9. Decision of Commissioner, supra, p. 6.

be erroneous or without substantial foundation. While it may be true that the physical and chemical properties of the substance known as "wax" can be ascertained after exacting analysis by one trained and expert in the field, and while such persons have indicated the lack of wax in Glass Wax, this does not automatically make the mark deceptive for the purposes of registration. The evidence does not establish that customers have been misled. To the contrary, it appears that the product satisfies the needs of the customers; that the average or ordinary customer cares little about, and knows little about, the scientific composition of the product. Certainly the fact that plaintiff has sold some ninety million units of its glass and metal cleaner, marked Glass Wax, betokens customer satisfaction and indicates that the product is a good product. The evidence does not show that the public has been influenced to purchase the product on account of believing that it contained wax, or that the product was simply a wax to be placed upon glass.

In analyzing the relationship of the mark to the product and its impact upon the public, deception is found when an essential and material element is misrepresented, is distinctly false, and is the very element upon which the customer reasonably relies in purchasing one product over another. When, as here, the product contains an element which can only be known exactly by rigid scientific analysis, and such element does not appear as determinative in leading customers to buy the product, the mark is not deceptive.[10]

## 2. Section 2(e)—Merely Descriptive or Deceptively Misdescriptive Marks

Having found the mark not deceptive, it then becomes necessary to consider whether or not it may be registered when measured against the prohibition of Section 2(e) which prohibits registration of marks which are "merely descriptive or deceptively misdescriptive" of the goods to which they are applied.

The language of Section 2(e) of the 1946 Act differs slightly from that of the corresponding part of Section 5 of the Trade Mark Act of 1905. In only one case has it been interpreted. The court held that the nature of the prohibition against registration of descriptive marks is essentially the same now as it was under the 1905 Act.[11] While we recognize that marks which merely describe the product itself, or its qualities and characteristics, are not registrable, we are equally aware of the sound rule that prior cases are of little value in deciding just what types of marks are merely descriptive.[12] But we are inclined to the view that this mark is not merely descriptive. What it describes is a wax for glass. It does not describe a cleaner and polisher for metal as well as for glass, which is the true nature of the product. It should not be overlooked that the product is advertised and sold as a cleaner for metal. The mark does

---

10. Cases cited by defendants to support their charge of deception involved marks which were deceptive or misleading in that they represented to the public that the article was something essentially different from the thing which they actually received. Here the evidence shows that customers sought a cleaner and were well satisfied. Had the evidence shown that customers bought the product as a wax for glass, a different problem would have been presented to the Court.

Such distinctions are indicated in the unique factual settings of each case. See for example, Nashville Syrup Co. v. Coca Cola Co., 6 Cir., 1914, 215 F. 527;

Kildow Cigar Company v. George B. Sprague Cigar Co., 1910, 35 App.D.C. 345; Levy v. Uri, 1908, 31 App.D.C. 441.

11. Andrew J. McPartland, Inc., v. Montgomery Ward & Co., 1947, 164 F.2d 603, 35 C.C.P.A.,Patents, 802, certiorari denied 1947, 333 U.S. 875, 68 S.Ct. 904, 92 L.Ed. 1151. See also Application of Hercules Fasteners, Inc., 1953, 203 F.2d 753, 40 C.C.P.A.,Patents, 944.

12. See Application of Hercules Fasteners, Inc., supra, note 11, and In re Locke Stove Co., 1946, 154 F.2d 200, 33 C.C. P.A.,Patents, 934.

not describe this quality or function at all.

The evidence establishes: that the product contains either no wax, or wax in insufficient quantity to justify use of the word; that customers might justifiably believe it does contain the element wax,[13] whether or not it was significant to them in purchasing the product; that it is sold in association with other wax products; that other glass and metal cleaners do contain wax and have an appearance not basically dissimilar to plaintiff's product. We therefore find ourselves in accord with the holding of the Patent Office that the mark, as employed in commerce, is deceptively misdescriptive.[14] For this reason it cannot be registered as a technical trade-mark.

Yet plaintiff submits another reason why it *can* and should be so registered. Plaintiff asserts that since it has introduced evidence of such convincing force as to establish that it is the original and prior user of the word combination Glass Wax, that the word "wax" had never before been applied to any window cleaning fluid, that the word combination was unknown in the English language before plaintiff coined it, and since it is incorrect to separate and analyze each word by itself, rather than considering the mark in its entirety, the mark should be considered fanciful, therefore "technical", therefore registrable regardless of secondary significance.

We are of the opinion that plaintiff's original adoption and prior use of the mark does not make what is essentially a descriptive mark into one that is distinctive and arbitrary.[15] We believe that the mark should not be dissected into "glass" and "wax" but should be adjudged in its entirety, Glass Wax.[16] Viewed in this way, it still remains immaterial that plaintiff has combined two common English words in a way which is not to be found in dictionaries and which is not precise and accepted grammar, for this does not destroy the meanings of the words used and the import of the total mark as it relates to the qualities and characteristics of the product itself. This mark is comprised of general words which, when viewed together, and regardless of whether they truly or falsely describe the immediate product, could as easily apply to a related class of goods and as aptly describe them as the one before the Court. Such a mark is not "technical".[17]

3. Section 2(f)—Secondary Significance: Distinctiveness Based upon Use and Acceptance.

A mark held unregistrable under Section 2(e) may still be registered under Section 2(f) if it has been used by an applicant and become distinctive of the plaintiff's goods in commerce.[18]

The Patent Office found the mark barred as to registration under Section 2 (e) and then refused to consider the application under Section 2(f). As a re-

13. The Christopherson survey has been admitted and considered by this Court. Its probative value has been evaluated in light of the inexperience of the questioners, the wording of the questions, its limited scope and its self-serving nature.

14. While the reasoning found in the following cases is somewhat in conflict, the approach of the courts in testing whether marks are deceptive, merely descriptive, or deceptively misdescriptive, is relevant to the present case. In re Bonide Chemical Co. Inc., 1931, 46 F.2d 705, 18 C.C.P.A.,Patents, 909; In re International Resistance Company, 1934, 69 F. 2d 566, 27 C.C.P.A.,Patents, 1001; In

re Hair Net Packers, Inc., 1940, 115 F.2d 254, 28 C.C.P.A.,Patents, 715.

15. In re Bailey Meter Co., 1939, 102 F.2d 843, 26 C.C.P.A.,Patents, 1136.

16. Application of Ada Mill Co., 1953, 205 F.2d 315, 317, 40 C.C.P.A.,Patents, 1076.

17. A relevant discussion of this is found in In re Bonide Chemical Co, supra.

18. This assumes, as we do here, that the mark is not a notation inherently incapable of functioning as a trade-mark; incapable of indicating the origin of the product rather than the product itself in the eyes of the consuming public.

sult no ruling has been made on the merits of the claim for distinctiveness.[19] The refusal to consider the application under 2(f) was based upon a rule of the Patent Office which required that an allegation of distinctiveness that was not based on substantially exclusive use over a five-year period, but rather on other facts and circumstances, had to be shown by proof submitted separately but included within the application for registration as a technical trade-mark. Plaintiff's application indicated an intent to file under 2(f), but no such proof, as affidavits, was submitted to establish this claim, nor was any reference made to the prevailing rule. The application was published without reference to Section 2(f).

Plaintiff argues that distinctiveness is a fact which has been established by the record; that such evidence of distinctiveness must be considered in this case, for among other things, the Commissioner had the duty to make such determination but refused to do so on arbitrary grounds; and that this Court has the duty to determine marks generally and completely; that distinctiveness was categorically pleaded in plaintiff's answer to the notice of opposition; that Johnson called witnesses to rebut plaintiff's claim of distinctiveness; that plaintiff has committed no act which could be construed as an estoppel from asserting this claim; that the Patent Office was unreasonably strict and overbearing in refusing to allow plaintiff to amend his application to comply with the prevailing rule and in insisting that plaintiff file an entirely new application.

The Patent Office maintains that the rule is one governing the internal procedure in its office; that the rule is reasonable; that it has been applied fairly, but regardless of all this, it asserts that this Court has no jurisdiction to determine any of these issues or that of secondary significance, since the Patent Office has not first considered it on the merits.

This action is brought under Section 21 of the Trade-Mark Act of 1946 which provides for court review of certain Patent Office determinations "under the same conditions, rules, and procedure as are prescribed in the case of patent appeals or proceedings so far as they are applicable." This section absorbs and embodies old R.S. § 4915.[20] There is no reason to suspect, nor has counsel shown any reason to question, that the section confers upon the courts any kind of jurisdiction differing from that existing under the Revised Statute, which has been widely interpreted.

In Shoemaker v. Robertson,[21] an application for a patent had been denied by the Patent Office on the ground that it did not conform to the rules of that office, having been signed in but one place instead of three as required. Appeal was taken under R.S. § 4915, and dismissed by the court which stated:

"In Butterworth v. United States ex rel. Hoe, 112 U.S. 50, 68, 5 S.Ct. 25, 28 L.Ed. 656, it was ruled that the remedy by bill in equity under section 4915, R.S. (35 U.S.C.A. § 63), applies only when the Commissioner decides to reject an application for a patent on the ground that the applicant is not on the merits entitled to it. In the present case the Commissioner did not reject the application on the merits; he refused to consider it at all."

Judge Washington's detailed and considered analysis of this very issue in Gilbert v. Marzall[22] is compelling precedent here. On review, the disappointed applicants sought an ad-

19. The Decision of the Commissioner, supra, p. 17, concluded with: "Applicant is not precluded by the decision in this case from applying for registration under Section 2(f) of the Act on a new application appropriately worded for this purpose, and the decision herein is without prejudice to consideration of registrability of the mark on such an application."

20. 35 U.S.C. § 63, now § 146.

21. 1931, 60 App.D.C. 345, 54 F.2d 456.

22. 1950, 87 U.S.App.D.C. 1, 182 F.2d 389.

judication that they were entitled to patents on certain claims which the Board of Appeals in the Patent Office had refused to consider. The court, while acknowledging that R.S. § 4915 established a proceeding in which new evidence could be received on review, nevertheless recognized the limitations of the statutory provision to the effect that:

"* * * the statute was not intended to authorize the courts to consider claims not considered on the merits by the Patent Office." [23]

We are satisfied that Congress did not intend, by setting up review in this court, to transfer the functions of the Patent Office to the District Court. This is sound. The court benefits from, and is entitled to, the trained and experienced determinations of the Patent Office on these questions which more often than not involve problems both intricate and subtle.[24] Certainly the question whether or not Glass Wax has become distinctive is of this type. We will not pass upon those claims which have not first been considered on the merits by the Patent Office,[25] nor consider evidence of dis-

tinctiveness or of possible Patent Office abusive application of its internal rules in this proceeding.[26]

There is no sound reason why we should not pass upon the merits of a claim for registration of a "technical" trade-mark while refusing to consider the merits of a claim for registration based on "distinctiveness".[27]

Considering all the written evidence, exhibits, and oral arguments admitted for presentation and filed here, we uphold the determination of the Patent Office in refusing registration of the mark Glass Wax.

II. The Counterclaims of S. C. Johnson & Son, Inc.

S. C. Johnson & Son, Inc., counterclaimant, seeks to enjoin the use of the mark Glass Wax by Gold Seal Company and to recover profits, damages and costs resulting to it from plaintiff's use of this mark.[28] This action is based upon the provisions of Section 43(a) of the Trade-Mark Act of 1946,[29] which provides in pertinent part as follows:

"Any person who shall affix, apply, or annex, or use in connection with

---

23. 87 U.S.App.D.C. 3, 182 F.2d 391.

24. Were the rule not to be strictly enforced, litigants would gain encouragement to bring into this court all sorts of new, complex, untried issues for original determination. This is a burden unsought, unwarranted and, we believe unintended by Congress.

25. See Lucke v. Coe, 1934, 63 App.D.C. 61, 69 F.2d. 379; Cherry-Burrell Corp. v. Coe, 1944, 79 U.S.App.D.C. 124, 143 F.2d 372.

26. Plaintiff has not established that it lacked an adequate administrative remedy in the Patent Office or that it lacked judicial remedies as a last resort. See Gilbert v. Marzall, supra; Coe v. United States, 1935, 65 App.D.C. 387, 84 F.2d 240; Steinmetz v. Allen, 1903, 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. 555; Butterworth v. U. S. ex rel. Hoe, 1884, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656.

27. Gold Seal Co. v. Weeks, 1954, 93 U.S. App.D.C. 249, 209 F.2d 802, held only that registration sought on the ground of secondary meaning did not present a separate and distinct claim from allegations that the term was neither merely descrip-

tive nor deceptively misdescriptive so that a judgment dismissing action as to secondary meaning was not a final judgment within the meaning of Rule 54(b), Federal Rules of Civil Procedure, 28 U.S. C.A.

28. Johnson, in its briefs, seeks a separate determination in the form of a declaratory judgment, 28 U.S.C. § 2201, that the words Glass Wax do not constitute either a trade-mark or a lawful trade-mark. Johnson has not pleaded the issue with clarity; has neither presented evidence nor argued it separately during the trial. In effect the Court has determined this against Johnson, and no further consideration is required. See footnote 18.

29. 15 U.S.C.A. § 1125(a). Johnson also relies upon Section 34 of the Act, 15 U.S.C.A. § 1116, which provides for injunctive relief against unfair use of trademarks in commerce, and upon Section 35, 15 U.S.C.A. § 1117, which provides for recovery of profits, damages and costs to a party who violates the right of the registrant of a mark registered in the Patent Office.

any goods or services, or any container or containers for goods * * * any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

### a. Contentions of the Parties:

S. C. Johnson & Son, Inc. contends that Section 43(a) was included in the Lanham Act to grant to a private party a remedy against a person who uses a false designation of origin or a false description or representation of his goods; that the section provides a remedy in the form of money damages and/or injunctive relief to *any* person who believes that he is or is likely to be damaged by the use of the false description or representation; and that this statute, as a result, makes false description a tort *sui generis,* actionable per se, similar to an action for libel where the law presumes damages from use of the libelous words making it unnecessary to plead or prove special damages. S. C. Johnson & Son, Inc. further contends that Gold Seal Company makes various products in fact containing wax, sells them in similar cans, and advertises them together. One of such products is Glass Wax which in fact contains no wax, this being established by expert analysis; that there are on record at least eight patents disclosing glass cleaning compositions which contain wax; that at the time Gold Seal Glass Wax was introduced, wax had for a long time been used in glass cleaners and polishes, and that people hearing of Gold Seal Glass Wax expected to find wax in the product; all these factors cumulatively establishing that the words Glass Wax are words tending to describe falsely this Gold Seal product. Johnson traces the history of wax back to the Egyptians, through the Greeks and Romans up to present times, showing its long recognized attributes as a protective and beautifying coating for surfaces of all types; it asserts that the word "wax" gives to products a connotation of value and enhances the saleability; that Johnson has been selling products which contain wax for over sixty-five years, having spent millions of dollars in educating housewives as to the advantage of wax; that Johnson sells between 30% and 40% of the total wax sold in the United States; that its sales have decreased due to the Gold Seal false description, as have those of the wax industry generally, for the housewife has but a limited portion of her budget for waxes which is being siphoned off by spurious products, injuring legitimate producers and marketers. In brief, Johnson seeks an injunction and damages on the ground the Gold Seal Company uses words tending falsely to describe its product, in effect palming off its product as a wax product, damaging Johnson through loss of sales, discredit to its wax products, and trading upon the good will and public acceptance of wax products generally.[30]

Johnson also seeks injunctive relief against use by Gold Seal on its containers of Glass Wax of the notation "T. M. Reg. U. S. Pat. Off." since Gold Seal has no registration in the United States Patent Office which includes the words Glass Wax.

---

**30.** Johnson states frankly that it cannot point with particularity to the sales it has lost due to the use Gold Seal has made of its mark but states in its brief that "use of the word wax by Gold Seal has obviously diverted from the wax purchases of legitimate wax products. As a result of this diversion Johnson, who ordinarily does between 30% and 40% of the business in the wax industry, has lost sales in a proportion of approximately 30% to 40% of Gold Seal's sales of glass wax." Brief for defendant Johnson on its Counterclaims. p. 19. Johnson reasons from there that the normal margin of profit on that volume would be about 40%, bringing its losses to about $5,000,-000.

Gold Seal answers that the failure of Johnson to offer any proof of damages arising out of the unfair competition alleged in the marketing of its cleaner and polisher Glass Wax, or that it is suffering any injury from Gold Seal's trade practices, establishes that the counterclaim was not filed in good faith, but rather to harass Gold Seal in its attempt to register the mark; that Johnson does not have a monopoly of the word "wax"; that Johnson has failed to prove that the purchasing public knows what the word "wax" means; that Johnson neither alleges nor proves that it has been injured directly or that there has ever been confusion between Gold Seal's product Glass Wax and any product of Johnson, or that any user of the product Glass Wax ever found it inadequate for the use for which it was sold. Further, says Gold Seal, Johnson must allege and prove that it has some interest in the mark or that it is marketing a competing product to fall within 43(a), but it has never used the mark, never employed the words "glass" and "wax" in juxtaposition in referring to a product, never put out a product which could successfully compete with Glass Wax.

Gold Seal maintains that Section 43 (a), as a matter of law, does not change the substantive law as it existed before its effective date so as to allow plaintiff to sue as a vicarious avenger of the defendant's customers; that it merely broadened jurisdiction of the federal courts to allow a private party to state a claim, but it did not do away with the necessity of showing direct injury or such likelihood for there to be recovery.

Gold Seal then makes a general denial of Johnson's charges on the merits, asserting that Glass Wax means to most persons Gold Seal's familiar product to be had everywhere, rather than a compound of particular substances, and no matter how it is considered, customers were not influenced to purchase Glass Wax because they thought it contained wax, and that it ill becomes Johnson to make this claim under 43(a) alleging false description, since it markets a product, Car-Nu, which is labelled "A Johnson's Wax Product" but contains no wax and that, further, Johnson is guilty of laches, having remained silent for seven years, permitting Gold Seal to spend millions on advertising before filing its charges—to the grave detriment of Gold Seal.

b. *Interpretation of Section 43(a); Conclusions of Fact and Law:*

Cases involving application of Section 43(a) have been few in number and conflicting in interpretation. Some courts have read into the section the narrow common law "property right" limitation to the effect that apart from trademark infringement and proof of "palming off" misrepresentation by a tradesman concerning his product works no actionable injury upon his competitors.[31]

We believe that L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,[32] expresses correct law and represents the more sound interpretation. The court said:

"We find nothing in the legislative history of the Lanham Act to justify the view that this section is merely declarative of existing law. Indeed, because we find no ambiguity in the relevant language in the statute we would doubt the propriety of resort to legislative history even if that history suggested that Congress intended less than it said. It seems to us that Congress has defined a statutory civil wrong of false representation of goods in commerce and has given a broad class of suitors injured or likely to be injured by such wrong the right to relief in the federal courts. * * * But however similar to or different from

31. See for example, Chamberlain v. Columbia Pictures Corp., 9 Cir., 1951, 186 F. 2d 923, as to the perpetuation of American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 1900, 103 F. 281. Compare Samson Crane Co. v. Union Nat. Sales, Inc., D.C.Mass.1949, 87 F.Supp. 218, California Apparel Creators v. Wieder of California, 2 Cir., 1947, 162 F.2d 893.

32. 3 Cir., 1954, 214 F.2d 649, 651.

pre-existing law, here is a provision of a federal statute which, with clarity and precision adequate for judicial administration, creates and defines rights and duties and provides for their vindication in the federal courts."

In this respect Section 43(a) does create a federal statutory tort, *sui generis*, and to this extent Johnson need not show that any false description or representation was willful or intentional, need not prove actual diversion of trade (palming off, so to speak), need not establish a veritable monopoly position in the industry.[33] It means that wrongful diversion of trade resulting from false description of one's products invades that interest which an honest competitor has in fair business dealings—an interest which the courts should and will protect whether it be called that of "property", "quasi-property" or something else. It represents, within this area, an affirmative code of business ethics whose standards can be maintained by anyone who is or may be damaged by a violation of this segment of the code. In effect it says: you may not conduct your business in a way that unnecessarily or unfairly interferes with and injures that of another; you may not destroy the basis of genuine competition by destroying the buyer's opportunity to judge fairly between rival commodities by introducing such factors as falsely descriptive trade-marks which are capable of misinforming as to the true qualities of the competitive products.

We are satisfied that Johnson had adequate standing to assert its right to recover in a civil action under this section and was entitled to be heard and to present evidence. We are equally satisfied, however, that Johnson has failed to prove that it is entitled to relief in the form of injunction, profits, damages or costs. It has not established that as a competitor it is or is likely to be damaged by any false description or representation. It has not shown damage or likelihood of damage due to the fact that any substantial number of reasonable customers were misled or likely to be misled as to the nature of the product, they having understood the mark to designate the ingredients, buying the product for its wax content rather than for its effectiveness as a cleaner; or

that if they had known the true facts, they most likely would have purchased a different product, whether that of Johnson or some other competitor. The evidence fails to show that Gold Seal Glass Wax is inferior to any similar product marketed by a competitor, or that it has rested or needs to rest upon the borrowed good will of the wax industry generally to maintain commercial success. In short, the record does not disclose perfidious business dealings by Gold Seal resulting in damage or likelihood of damage to any interest of Johnson.[34]

We therefore deny injunctive relief to Johnson. We also deny relief under Section 35 of the Lanham Act in the form of an accounting for profits and damages. Suffice it to say Johnson's attempt to analogize Section 43(a) to a libel action, making proof of actual damages unnecessary, is totally without support in law or reason. Pecuniary recovery must be individualized, loss of sales must be shown. Section 43(a) was to promote fair business dealings. It was not to provide a windfall to an overly eager competitor.

All of the contentions raised in Johnson's counterclaim will therefore be denied in all respects.

## Amendment to Opinion

Upon consultation with counsel and in the interest of making its findings unmistakably clear, the Court amends its original memorandum, by way of summary, in the following respects:

1. Plaintiff's trade-mark GLASS WAX, for plaintiff's cleaner, is not deceptive and is not unregistrable by reason of Section 2(a) of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1052(a).

2. Plaintiff's trade-mark GLASS WAX, for plaintiff's cleaner, is not inherently incapable of functioning as a trade-mark and is not unregistrable by reason of Section 2 (Preamble) and Section 45 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1052 and 15 U.S.C.A. § 1127.

3. Plaintiff's trade-mark GLASS WAX, for plaintiff's cleaner, is not merely descriptive and is not for this reason unregistrable by reason of Section 2(e) of the Trade-Mark Act of 1946, 15 U.S. C.A. § 1052(e).

33. Within the meaning of Ely Norris Safe Co. v. Mosler Safe Co., 2 Cir., 1925, 7 F.2d 603.

34. It should be noted that while Johnson and Gold Seal are fierce competitors generally, Johnson neither produces nor advertises a specific usable substitute for Gold Seal Glass Wax, although it avers

that it produces other items which can be used for the same purpose.

It should also be noted that our holding under Section 43(a) and our finding of deceptive misdescription under Section 2(e) are entirely compatible, as the considerations of fact and the law and the policy in regard to each are so dissimilar.